IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| CSX Transportation, Inc., | ) | Civil Action No.  3:14-cv-03821-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **FINDINGS OF FACT,** |
| | ) | **CONCLUSIONS OF LAW,** |
| South Carolina Department of Revenue and | ) | **AND ORDER** |
| Rick Reames III, Agency Director of the | ) | |
| South Carolina Department of Revenue, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court after trial for final disposition of Plaintiff CSX

Transportation, Inc.'s ("Plaintiff") request for declaratory relief. Plaintiff filed a Verified

Complaint for Injunction and Declaratory Relief on September 29, 2014, against South Carolina

Department of Revenue and Rick Reames, III, Agency Director of the South Carolina Department

of Revenue ("Defendants"). ECF No. 1. Plaintiff requested a declaration that South Carolina's tax

treatment of real property owned by railroads under the South Carolina Real Property Valuation

Reform Act  ("SC Valuation Act"), codified at S.C. Code Ann. § 12-37-3140, violates Section

306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976 ("4-R Act"), codified

at 49 U.S.C. § 11501(b)(4). Specifically, the SC Valuation Act limits increases in the value of

commercial and industrial real property for tax assessment purposes to 15% over a five year

reassessment cycle; however, this 15% cap on value increases is not extended to real property

owned by railroads. Plaintiff asks the court to declare that the SC Valuation Act's exclusion of

Plaintiff from the 15% cap constitutes a violation of Section 11501(b)(4) of the 4-R Act.

On September 29, 2014, Plaintiff filed a Motion for Preliminary Injunction to enjoin

Defendants from levying upon or collecting taxes for the 2014 tax year based on an appraised real

property value in excess of a 15% increase over Plaintiff's appraised real property value for the year 2007. After a hearing held on October 29, 2014 (ECF No. 27), the court granted Plaintiff's Motion for Preliminary Injunction by Order on November 4, 2014. ECF No. 28. Defendants then filed an Amended Answer (ECF No. 42), and moved to dismiss Plaintiff's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) on June 1, 2015. ECF No. 47. Following a hearing held on July 31, 2015, the court denied Defendants' motion to dismiss. ECF No. 55. The case proceeded to a bench trial, which was held on November 3, 2015. ECF No. 77.

After hearing the testimony, carefully considering the entire record, weighing the credibility of the witnesses, reviewing the exhibits, and applying the applicable law, the court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52.[1]

### FINDINGS OF FACT

1. Plaintiff is an interstate common carrier by railroad. Plaintiff operates in 23 states, including South Carolina. Tr. 14:3; 37:2-14.

2. Defendant South Carolina Department of Revenue ("South Carolina" or "Department of Revenue") is an agency of South Carolina.  It is charged by law to administer and enforce the revenue laws of the state.  *See* S.C. Code Ann. § 12-4-10.

3. Defendant Rick Reames, III is the Agency Director of the South Carolina Department of Revenue. Tr. 80:8-9.

4. Subject matter jurisdiction is proper as this complaint raises a federal question under 49 U.S.C. §§ 11501(b)(4) and 11501(c). *See also CSX Transp., Inc. v. Alabama Dep't of*

---

[1] The court notes that to the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted.

*Revenue,* 562 U.S. 277, 281 n.2 (2011) ("*CSX I*") (stating that 49 U.S.C. § 11501(c)'s limitations against courts providing relief are applicable only to claims brought under Sections 11501(b)(1) and (2)).

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b).

**Railroad Property Tax Scheme**

6.     In South Carolina, all property that is subject to taxation is valued at its true value, also known as its fair market value. S.C. Code Ann. § 12-37-930. There are a variety of methods for calculating fair market value, but in the case of railroad property, state statute requires that the Department of Revenue employ the unit valuation concept to calculate fair market value. S.C. Code Ann. § 12-4-540. The unit valuation concept is useful for appraising properties that are spread over vast geographic areas and bear integrated systems. Tr. 142:23-146:16.

7.     South Carolina generally relies on an "income approach" in calculating railroad unit values. *Id.* at 16:12-15; 144:6-13; 152:9-12. The income approach approximates the value of a property based on the income the property is earning. *Id.* The first step in the income approach is for South Carolina to review a company's prior income statements. *Id.* at 38:2-14. From the review of prior income statements, South Carolina can ascertain anticipated future profits. *Id.* at 16:16-22. Anticipated future profits are then divided by the weighted average cost of capital. *Id.* The resulting amount is the fair market value of the property, which represents the value of all of Plaintiff's property located across the country. *Id.* 16:16-25; 17:8-11; 144:14-20.

8.     The next step is to allocate a portion of the calculated unit value to South Carolina. *Id.* at 17:12-20. This allocation is done by balancing a number of factors, including revenue

derived in South Carolina versus revenue derived elsewhere; track miles in South Carolina versus track miles elsewhere; and investment in South Carolina versus investment elsewhere. *Id.* Once an allocation percentage has been determined, South Carolina applies it to the fair market value, which was previously calculated under the income approach, to arrive at a fair market value solely attributable to property within the state. *Id.* at 17:23-18:2.

9.      The next step is to subtract property that has already been taxed or is tax-exempt. *Id.* at 18:6-18. In Plaintiff's case, there were two subtractions from the fair market value. First, Plaintiff's licensed motor vehicles were subtracted because they were taxed at the time of registration. *Id.* Second, Plaintiff's pollution control facilities were subtracted because they are tax-exempt under South Carolina law. *Id.* Once these reductions are made, the resulting value is called the appraised value. 18:21-19:3.

10.     After arriving at the appraised value, South Carolina applies a statutory assessment ratio so as to tax property at a percentage of its fair market value. The South Carolina legislature has established and codified statutory assessment ratios applicable to various types of property. *See* S.C. Code Ann. § 12-43-220. The statutory assessment ratio for railroad property is 9.5%. S.C. Code Ann. § 12-43-220(g). In Plaintiff's case, South Carolina applied a 9.5% ratio to the appraised value of Plaintiff's property. Tr. 19:12-15.

11.     Next, South Carolina applies an equalization factor. *Id.* at 21:5-18; 46:20-22. The equalization factor is a reduction afforded only to transportation companies for hire, such as Plaintiff, to account for disparities between the fair market valuation of railroads and other properties. *See* S.C. Code Ann. § 12-43-220(g); Tr. 70:19-20. South Carolina applied

an equalization factor of 20% to Plaintiff's property to arrive at a final property tax assessment. Tr. 19:10-20:4.

12.     The final step is to apportion a percentage of the final property tax assessment to individual counties in South Carolina, based on where a company's property is located. *Id.* at 47:10-18. Plaintiff has property in thirty-nine of the State's forty-six counties. *Id.* 157:1-2. Each county applies a local tax rate to Plaintiff's tax assessment, and then each county individually bills Plaintiff. Tr. 20:13-25; 104:11-15.

13.     In Plaintiff's case, South Carolina followed the preceding steps in calculating the unit value of Plaintiff's property and applying the equalization factor. The resulting tax assessment for 2014 was $40,727,560. Verified Complaint, ECF No. 1 at 3; Plaintiff's Trial Ex. 1.

**Non-Railroad Property Tax Scheme**

14.     As referenced above, in 2006, the South Carolina legislature passed the SC Valuation Act, codified at S.C. Code §§ 12-37-3110 to 12-37-3170. The Act generally limits the permissible increases in appraised values of commercial and industrial real properties to no more than 15% within a five-year period for property tax purposes.  Tr. 22:6-10; 54:2-5.

15.     The SC Valuation Act excludes railroad property from the 15% cap. Specifically, § 12-37-3140(D) states that the SC Valuation Act does not apply to "[r]eal property valued by the unit valuation concept." Railroad companies, along with utility providers such as water, sewer, and power companies, are valued under the unit valuation concept, and thus the real properties of these companies are not afforded the 15% cap. Tr. 145:10-13.

16.     Plaintiff brings this action alleging that the SC Valuation Act violates Section 11501 of the 4-R Act and requests a declaratory judgment and a permanent injunction enjoining South

Carolina from levying taxes in excess of the amount that would be levied if the 15% cap were applied. Verified Complaint, ECF No. 1 at 6; Tr. 33:9-13. Plaintiff estimates that its 2014 property tax assessment would be $33,551,735 if given the benefit of the 15% cap. Plaintiff's Trial Ex. 1.

## CONCLUSIONS OF LAW

1.   Congress enacted the Railroad Revitalization and Regulatory Reform Act of 1976 to help restore the financial stability of the railroad industry in the United States. *CSX I*, 562 U.S. at 280. To achieve this goal, the 4-R Act gave railroads an avenue through which to challenge state and local taxation schemes that discriminate against rail carriers. *Id.*

2.   The 4-R Act, now codified at 49 U.S.C. § 11501, bars states and localities from engaging in four forms of discriminatory taxation:

> (b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State or authority acting for a State or subdivision of a State may not do any of them:
>
> > (1) Assess railroad property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.
> >
> > (2) Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.
> >
> > (3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.
> >
> > (4) Impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Board under this part.

At trial, Plaintiff brought its challenge under the fourth form of discriminatory taxation (Tr. 54:17-25), arguing that the South Carolina Valuation Act "imposes another tax that discriminates." *See* 49 U.S.C. § 11501(b)(4).

3.      Plaintiff bears the burden of proof in establishing a prima facie case of discrimination under subsection (b)(4). *BNSF Ry. Co. v. Tennessee Dep't of Revenue*, 800 F.3d 262, 271 (6th Cir. 2015), *reh'g denied* (Nov. 19, 2015) (citing *CSX I*, 562 U.S. at 288 n.8). Once Plaintiff establishes a prima facie case, the burden shifts to Defendants to offer a "sufficient justification" for the differential tax treatment. *Id.*

4.      To bring a successful challenge under subsection (b)(4), the plain language of the statute and the weight of authority suggest that there must first be a tax imposed. *See CSX I,* 562 U.S. at 279 (challenging Alabama's imposition of sales and use taxes); *Burlington N. R. Co. v. City of Superior, Wis.*, 932 F.2d 1185, 1186 (7th Cir. 1991) (challenging Wisconsin's imposition of an occupational tax); *Burlington N. R. Co. v. Huddleston, 94 F.3d 1413, 1415* (10th Cir. 1996) (challenging Colorado's imposition of a computer software tax). *But see Burlington N. R. Co. v. Bair*, 766 F.2d 1222, 1224 (8th Cir. 1985) (challenging Iowa's rollbacks and tax credits)

5.      While the 4-R Act offers no definition for "impose" or "tax," the Supreme Court has provided a definition for "another tax" as used in subsection (b)(4):

> A State (or other governmental entity) seeking to raise revenue may choose among multiple forms of taxation on property, income, transactions, or activities. "[A]nother tax," as used in subsection (b)(4), is best understood to refer to all of these—more precisely, to encompass any form of tax a State might impose, on any asset or transaction, except the taxes on property previously addressed in subsections (b)(1)-(3).

*CSX I*, 562 U.S. at 279. Even in this expansive definition, the Court suggests that there be some *tax imposed* in the first instance.

6.  The SC Valuation Act does not impose a tax within the meaning of subsection (b)(4). Instead, the Act introduces one particular element, a cap on increases in appraised values, to an already-existing tax scheme. Stated differently, the Act offers a benefit to properties valued under a certain methodology but does not extend that benefit to properties valued under the unit valuation methodology. South Carolina values railroad properties under the unit valuation concept, and thus, the benefits afforded to properties under the Valuation Act do not apply to railroad properties.

7.  At trial, Plaintiff proposed a mechanism through which its real property could be separated from its personal property, lifted from the unit valuation methodology, and afforded the 15% cap. However, the court need not reach the merits of this piecemeal approach as Section 11501 offers no authority for Plaintiff to attempt to extract benefits from one tax scheme while holding on to benefits, i.e., the equalization factor, from an entirely different tax scheme.

8.  In the absence of a state-imposed tax, railroad carriers may rely on a different provision of 49 U.S.C. § 11501 in seeking relief. While subsections (b)(2)-(4) specifically state that states may not "levy," "collect," or "impose" certain taxes, subsection (b)(1) provides an avenue for challenging an overall, unfavorable tax "assessment."

9.  Although Plaintiff's Verified Complaint left open the possibility that it might bring a challenge under any one of the other provisions of Section 11501, including subsection (b)(1), Plaintiff ultimately proceeded to trial solely on subsection (b)(4). Plaintiff has failed to meet its burden of proving discrimination under subsection (b)(4).

10. The court concludes that subsection (b)(4) may not be used to challenge the 15% cap; therefore, the court need not consider the implications of framing the cap as an "exemption"

versus a "tax." *See CSX I*, 562 U.S. at 279; *Dep't of Revenue of Oregon v. ACF Indus., Inc.*, 510 U.S. 332, 335 (1994).

11.     Finally, the court need not reach the merits of South Carolina's justification defense raised in light of *Alabama Department of Revenue v. CSX Transportation, Inc.*, 135 S.Ct. 1136 (2015) ("*CSX II*").

12.     This court previously granted a preliminary injunction, finding that Plaintiff made a clear showing that it was likely to succeed on the merits of its case. Order, ECF No. 28 ("CSXT has presented evidence to give this court reasonable cause to believe that this 15% cap of fair market value has a discriminatory effect on CSXT by subjecting it to a higher assessment ratio in violation of the 4-R Act."). However, given that Plaintiff chose to proceed solely under subsection (b)(4) rather than challenge the assessment to true market value ratio, Plaintiff has been unsuccessful on the merits of its challenge.

## CONCLUSION

For the foregoing reasons, the court DECLINES to enter declaratory judgment on Plaintiff's behalf. Plaintiff's claim is DISMISSED WITH PREJUDICE. The preliminary injunction issued on November 4, 2014 is lifted (ECF No. 6), and Plaintiff's request for permanent injunction is denied.

**IT IS SO ORDERED**.

  s/ Margaret B. Seymour
MARGARET B. SEYMOUR
SENIOR UNITED STATES DISTRICT JUDGE

June 6, 2016
Columbia, South Carolina